**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAARIN KWON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. |
| v. | **CLASS ACTION COMPLAINT** |
| NBTY, INC., UNITED STATES NUTRITION, INC., and HEALTHWATCHERS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Haarin Kwon ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit against NBTY, Inc., United States Nutrition, Inc., and Healthwatchers, Inc. (collectively, "Defendants"), for misrepresenting Body Fortress Super Advanced Whey Protein ("Body Fortress") as having "60 g[rams] PREMIUM PROTEIN per 2 scoops" and that it is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN" (collectively, the "Misrepresentations").  In reality, Body Fortress is "spiked" with additional unnecessary free-form amino acids, non-protein amino acids, and a litany of other non-whey ingredients, including creatine monohydrate.  As a result of Defendants' practices, Body Fortress (a) contains significantly less whey protein than represented, and (b) is not premium whey protein.

1

2.      The whey protein industry is a growing and highly competitive business environment: "during the forecast period, [the market for] protein products is expected to grow by 62% to reach US $7.8 billion in 2018."[1]  However, the wholesale price of whey protein has continually increased in recent years and is typically purchased for roughly $15 to $18 per kilogram, resulting in relatively low profit margins for manufacturers.

3.      In an effort to reduce its costs, Defendants add cheaper free-form amino acids, non-protein amino acids, and other non-whey ingredients to Body Fortress Super Advanced Whey Protein, including but not limited to taurine, glycine, L-glutamine, leucine, and creatine monohydrate.  Thus, Body Fortress is *not* "Premium Whey Protein" and contains approximately 30% less whey protein than Defendants represented on the label of Body Fortress.

4.      Defendants add these ingredients to increase the nitrogen content of Body Fortress.  Nitrogen is the "marker" used by the common test as a rough estimate of the amount of protein in a product, but it is not a direct measurement of the actual protein content.  By adding nitrogen-rich ingredients, Body Fortress appears to contain more protein than it actually does.

5.      This act of adding nitrogen is commonly referred to as "protein-spiking," "nitrogen-spiking," or "amino-spiking," and was evidenced recently in 2007 when a wide variety of pet foods were recalled due to adulteration with melamine, a compound that contains 67% nitrogen by mass.  In the wake of the scandal, *USA Today* reported that, "A leading theory is that [melamine] was added to fake higher protein levels."[2]  The issue arose again in 2008 when a variety of Chinese baby formulas were found to be adulterated with melamine, which was

---

[1] *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report.

[2] *See* Melamine In Pet Food May Not Be Accidental,
http://usatoday30.usatoday.com/money/industries/2007-04-19-pet-food-usat_n.htm.

similarly added to increase the apparent protein content in the affected products.[3]

6.      NBTY, Inc., has been a member of the American Herbal Products Association ("AHPA") – an organization of dietary supplement manufacturers – since at least 1993.  AHPA has condemned "protein-spiking" and issued a standard for measuring protein which expressly "exclude[s] any 'non-protein nitrogen-containing substances' when counting total protein content."[4]  Despite knowledge that "protein-spiking" is misleading to consumers, Defendants continued to advertise, distribute, label, manufacture, and market Body Fortress in a misleading and deceptive manner.

7.      Moreover, General Nutrition Corporation – a leading retailer of protein products – has set up an informational website called "Is Your Protein Scamming You?"[5]  Through this site, GNC criticizes the practice of "protein-spiking."  In particular, GNC states "[i]n order to accurately calculate the amount of real protein in a protein supplement, the nitrogen from other ingredients such as amino acids betaine *and creatine* must be subtracted from the total to determine the real protein amount."  *Id.* (emphasis added).

## THE PARTIES

8.      Plaintiff Haarin Kwon is a citizen of New York who resides in Fresh Meadows, New York.  Plaintiff Kwon is a health-conscious consumer with an active lifestyle.  In or about April 2015, Plaintiff Kwon purchased two 1.95 lb. containers of Body Fortress Super Advanced Whey Protein from Amazon.com for approximately $16.56 each.  Prior to purchasing Body

---

[3] *See* Protein Adulteration In China, http://en.wikipedia.org/wiki/Protein_adulteration_in_China ("These adulterants can be used to inflate the apparent protein content of products, so that inexpensive ingredients can pass for more expensive, concentrated proteins.").

[4] http://www.ahpa.org/Default.aspx?tabid=441 (April 1, 2014).

[5] http://www.gnclivewell.com/realprotein/.

Fortress, Plaintiff Kwon reviewed Body Fortress's labeling and packaging.  Specifically, he saw and relied upon the representations that Body Fortress: has (a) "60 g[rams] PREMIUM PROTEIN per 2 scoops;" and (b) that it is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."  In making his purchase, Plaintiff Kwon understood these representations to be warranties that (a) Body Fortress is, in fact, "Premium Whey Protein" and that (b) it actually contains "60 g[rams] PREMIUM PROTEIN per 2 scoops."  In reliance on these representations and warranties, Plaintiff Kwon paid a tangible increased cost for Body Fortress, which was worth less than represented because Body Fortress is not "Premium Whey Protein" and does not actually contain "60 g[rams] PREMIUM PROTEIN per 2 scoops."  Accordingly, these representations and warranties were part of the basis of the bargain, in that Plaintiff Kwon attributed value to these promises and would not have purchased Body Fortress, or would have only paid for the protein actually delivered by Body Fortress, if he knew the truth about its protein content and composition.  Ultimately, Plaintiff Kwon used Body Fortress as directed but did not receive "Premium Whey Protein" or "60 g[rams] PREMIUM PROTEIN per 2 scoops." Plaintiff Kwon further understood that the purchase involved a direct transaction between himself and Defendants, because the purchase came with Body Fortress' representation and warranty that Body Fortress is "Premium Whey Protein" and contains "60 g[rams] PREMIUM PROTEIN per 2 scoops."

9.      Defendant NBTY, Inc. ("NBTY") is incorporated in the State of Delaware, with a principal place of business at 2100 Smithtown Avenue, Ronkonkoma, New York  11779.  Upon information and belief, Defendant NBTY. has controlling interest in United States Nutrition, Inc. and Healthwatchers, Inc.

10.      Defendant NBTY is the parent company of Defendants, United States Nutrition,

4

Inc., and Healthwatchers, Inc.

11.     United States Nutrition, Inc. is incorporated in the State of Delaware, with a principal place of business at 90 Orville Drive, Bohemia, New York 11716, and is a subsidiary of Defendant NBTY.

12.     Healthwatchers, Inc. is incorporated in the State of Delaware, with a principal place of business at 90 Orville Drive, Bohemia, New York 11716, and is a subsidiary of Defendant NBTY.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

15.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in New York.  This court also has personal jurisdiction because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the State of New York.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants' principal places of business are in this District, Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district, including his purchase of Body Fortress.

## FACTUAL BACKGROUND

### The Differences Between Whey Protein And Free Form Amino Acids

17.     Whey is a complete protein source.  It contains all the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair, and enzymes.  A person's daily protein needs depend on his or her size, gender, and activity levels, although it likely amounts to somewhere between 46 grams and 56 grams for most individuals.  For athletes, daily protein requirements are well over 100 grams, which is often difficult to obtain from eating food alone.  Whey protein powder is considered an especially valuable source of protein because it is rich in branched-chain amino acids – leucine, isoleucine, and valine – which are metabolized directly within the muscles as opposed to being processed in the liver first.

18.     According to the 2005 Dietary Reference Intake ("DRI") guidance from the National Academy of Sciences, protein is comprised of long links of certain types of amino acids.  Stated otherwise, certain types of amino acids are the "building blocks" of protein.

19.     However, other types of amino acids, such as taurine (an ingredient in Body Fortress) are not naturally found in whey protein and are not processed by the body into protein.

20.     Furthermore, although amino acids are the building blocks of protein, they do not have the same beneficial effects of whole protein when they are free-form (*i.e.*, not part of a complete protein).  In fact, several studies have shown that complete protein is absorbed more effectively than free-form amino acids in isolation.[6]

21.     First, at least one study was conducted to determine whether the positive effects

___

[6] *See, e.g.*, Mauro G. Di Pasquale, *Amino Acids and Proteins for the Athlete:  The Anabolic Edge* 190 (2d ed. 2008).

of whey protein ingestion on the accrual of muscle protein are due solely to its constituent amino acids, or whether the ingestion of complete proteins is more beneficial.  The study included a comparison of three trial groups.  The first group was provided intact whey protein, in the form of whey protein powder.  The other two groups were provided free-form amino acids in isolation.  The researchers concluded that ingestion of complete whey protein improves skeletal muscle protein accrual through mechanisms that are beyond those attributed to free-from amino acids in isolation.[7]

22.     Second, another study found that "the lack of recovery after immobilization-induced atrophy during ageing is due to an 'anabolic resistance' of protein synthesis to amino acids during rehabilitation."  The study's results "highlight a novel approach to induce muscle mass recovery following atrophy in the elderly by giving soluble milk protein or high protein diets."[8]

23.     Third, yet another study concluded that, "the bound form of an EAA [essential amino acid] may be more efficiently utilized than when delivered in its free-form [in isolation]."[9]

**Defendants' False And Misleading Labeling Of
Body Fortress Super Advanced Whey Protein**

24.     Defendants' product, Body Fortress, features the ingredient sought by millions of

---

[7] Christos S. Katsanos, *et al.*, *Whey Protein Ingestion In Elderly Results In Greater Muscle Protein Accrual Than Ingestion Of Its Constitutent Essential Amino Acid Content*, 28 Nutr. Res. 651 (Oct. 2008), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2612691.

[8] Hugues Magne, *et al.*, *Contrarily To Whey And High Protein Diets, Dietary Free Leucine Supplementation Cannot Reverse The Lack Of Recovery Of Muscle Mass After Prolonged Immobilization During Ageing*, 590 J. of Physiology 2035 (Apr. 2012), *available at* http://jp.physoc.org/content/590/8/2035.long.

[9] Juha J. Hulmi, *et al.*, *Effect Of Protein/Essential Amino Acids And Resistance Training On Skeletal Muscle Hypertrophy:  A Case For Whey Protein*, 7 Nutrition & Metabolism 51 (2010), *available at* http://www.nutritionandmetabolism.com/content/7/1/51.

American consumers, "whey protein," by prominently displaying it on Body Fortresss' labeling,

"BODY FORTRESS SUPER ADVANCED WHEY PROTEIN."

25.     Body Fortress' label plainly states that Body Fortress has (i) 60 g[rams] [of]

PREMIUM PROTEIN per 2 scoops" and (ii) is SCIENTIFICALLY DESIGNED WITH:

PREMIUM WHEY PROTEIN."



26.     However, Defendants' claimed total protein count of 60 grams of protein per 2

scoops in Body Fortress includes <u>more</u> than just whey protein.  Body Fortress also includes, for

the purposes of "protein-spiking," (i.e., overstating the actual protein content) several free form

amino acids, including, glycine, L-glutamine, and leucine.

27.     Even worse, Body Fortress includes the non-protein amino acid taurine, which is

not naturally found in protein and is not processed by the body into protein.

28.     Moreover, Body Fortress contains creatine monohydrate, which is not not found in protein.



Ingredients: Super Whey Protein Blend (Whey Protein Concentrate, Whey Protein Isolate), Super Recovery Blend (Glycine, Creatine Monohydrate, Taurine, Threonine, L-Glutamine, Leucine, Valine, Isoleucine), Maltodextrin, Cocoa (processed with alkali), Natural and Artificial Flavors, Soy Lecithin, Cellulose Gum, Acesulfame Potassium, Sucralose.
Contains milk and soy ingredients.
Gluten Free

29.     Independent laboratory testing of Defendants' Product reveals the actual total content per two scoops of whey protein is actually around 43 grams, as opposed to 60 grams of protein claimed by Defendants.  Simply put, Defendants' labeling misleads consumers into believing that every gram of protein in Body Fortress is comprised solely of whey protein.

**Defendants Change Body Fortress' Labeling**

30.     In August 2014, Defendants were sued for similar misrepresentations concerning Body Fortress.  *See Mencer, et al. v. NBTY, Inc.*, et al., Case No. 14-cv-05030 (E.D.N.Y.).  The *Mencer* action was voluntarily dismissed in March 2015.

31.     Implicitly recognizing the false and misleading nature of their labeling, Defendants produced a new label for Body Fortress, which is currently being implemented at retail locations nationwide.  The new label now discloses that Body Fortress contains "60g PREMIUM PROTEIN per 3 scoops + 9g Super Recovery Blend." (emphasis added).[10]

**Defendants' Conduct Harmed Plaintiff And Class Members**

32.     Plaintiff and members of the Class and New York Subclass were in fact misled by Defendants' Misrepresentations regarding the true nature of Body Fortress.

---

[10] http://www.bodyfortress.com/chocolate-whey-protein-powder.

33.     The difference between Body Fortress as promised and Body Fortress as sold is significant.  First, Body Fortress does not contain "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops," as represented.  Second, the amount of actual protein provided, and the measure of protein per serving, significantly alters the benefits provided to consumers, as well as the actual value of Body Fortress itself.

34.     As aforementioned, whey protein is superior to free-form amino acids as a protein source.  As a result, consumers are getting an inferior product in comparison to what they bargained for because Body Fortress does not contain "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops," but instead contains free-form amino acids, non-protein amino acids, and other non-whey ingredients.

35.     Consumers are left with a product that contains less protein than represented, due to the presence of "protein-spiking" ingredients.

36.     Plaintiff and members of the Class and New York Subclass would not have purchased Body Fortress, or would have only paid for the whey protein actually delivered by Body Fortress, if they had known the truth regarding Body Fortress.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Body Fortress (the "Class") and a subclass of Class members who purchased Body Fortress in New York (the "New York Subclass").  Excluded from the Class and New York Subclass is any entity in which Defendants have a controlling interest, and officers or directors of Defendants, or persons who purchased Body Fortress for purposes of resale.

38.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and

New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

39.     Common questions of law and fact exist as to all members of Class and New York Subclass and predominate over questions affecting only individual Class and New York Subclass members.  Common legal and factual questions include, but are not limited to, whether Defendants' labeling, marketing, advertising, and promotion of Body Fortress was false and misleading.

40.     The claims of the named Plaintiff are typical of the claims of the Class and New York Subclass in that the named Plaintiff was exposed to Defendants' false and misleading labeling, marketing, advertising, and promotion, purchased Body Fortress, and suffered a loss as a result of that purchase.

41.     Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class and New York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

42.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and New York Subclass members.  Each individual member of the Class and New York Subclass may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and

11

multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>COUNT I</u>
**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)**

43.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against all Defendants.

45.     Body Fortress Super Advanced Whey Protein is a consumer product as defined in 15 U.S.C. § 2301(1).

46.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

47.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

48.     Defendants' product, Body Fortress, has failed to meet a specified level of performance, namely, that Body Fortress contains "60 g[rams] PREMIUM PROTEIN per 2 scoops" and that it is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN," for a specified period of time warranted by Defendants, the expiration date of Body Fortress.

49.     In connection with the sale of Body Fortress, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that Body Fortress:

(i) contains "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops" and (ii) is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."  Thus, a reasonable consumer would expect that Body Fortress does, in fact, contain 60 grams of premium protein per 2 scoops, and is, in fact, made from premium whey protein.

50.     However, Body Fortress does not conform to the express warranties because Body Fortress does not, in fact, contain 60 grams of premium whey protein per 2 scoops, and is not, in fact, made from premium whey protein.

51.     By reason of Defendants' breach of express warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the MMWA, thereby damaging Plaintiff and Class members.  *See* 15 U.S.C. §§ 2301, *et seq.*

52.     Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Body Fortress if they had known that Body Fortress does not contain 60 grams of premium protein per 2 scoops; (b) they paid a price premium for Body Fortress based on Defendants' express warranties; and (c) Body Fortress did not have the characteristics, uses, or benefits as promised, namely that Body Fortress contains "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops" and/or is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."

53.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breach of written and implied warranty, which either constitute the full purchase price of Body Fortress or the difference in value between Body Fortress as warranted and Body Fortress as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to

have been reasonably incurred by Plaintiff and the Class in connection with the commencement
and prosecution of this action.

54.     On June 1, 2015, prior to filing this action, Defendants were served with a pre-suit
notice letter that complied in all respects with the MMWA.  Plaintiff's counsel sent Defendants a
letter advising them that they are in violation of the MMWA and demanded that they cease and
desist from such violations and make full restitution by refunding the monies received therefrom.
A true and correct copy of Plaintiff's counsel's letter is attached hereto as Exhibit A.

**COUNT II**
**(Breach of Express Warranty)**

55.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully
set forth herein.

56.     Plaintiff brings this claim individually and on behalf of members of the Class and
New York Subclass against all Defendants.

57.     In connection with the sale of Body Fortress, Defendants issued written
warranties.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers
expressly warranted that Body Fortress was fit for its intended purpose by making the express
warranties:  that Body Fortress (i) contains "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops"
and (ii) is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."

58.     Defendants' express warranties, and their affirmations of fact and promises made
to Plaintiff and the Class regarding Body Fortress, became part of the basis of the bargain
between Defendants and Plaintiff and the Class and New York Subclass, thereby creating an
express warranty that Body Fortress would conform to those affirmations of fact, representations,
promises, and descriptions.

59.     Body Fortress does not, in fact, contain "60 g[rams] [of] PREMIUM PROTEIN

14

per 2 scoops," nor is it "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY

PROTEIN."  Instead, Body Fortress contains free-form amino acids, including L-glutamine, non-

protein amino acids, including glycine, L-glutamine, leucine, and other non-whey ingredients.

60.     Plaintiff and members of the Class were injured as a direct and proximate result of

Defendants' breach because (a) they would not have purchased Body Fortress if they had known

that Body Fortress did not contain 60 grams of premium protein per 2 scoops, and was not made

from premium whey protein; (b) they paid a price premium for Body Fortress based on

Defendants' express warranties; and (c) Body Fortress did not have the characteristics, uses, or

benefits as promised, namely that Body Fortress contains "60 g[rams] [of] PREMIUM

PROTEIN per 2 scoops" and/or is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY

PROTEIN."  As a result, Plaintiff and members of the Class and New York Subclass have been

damaged either in the full amount of the purchase price of Body Fortress or in the difference in

value between Body Fortress as warranted and Body Fortress as sold.

61.     On June 1, 2015, prior to filing this action, Defendants were served with a pre-suit

notice letter that complied in all respects with N.Y. U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel

sent Defendants a letter advising them that they breached an express warranty and demanded that

they cease and desist from such breaches and make full restitution by refunding the monies

received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as

Exhibit A.

<u>COUNT III</u>
**(Breach Of The Implied Warranty Of Merchantability)**

62.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set

forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the Class

and New York Subclass against all Defendants.

64.     Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed Body Fortress, which is a "good" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that Body Fortress was merchantable, including that it could pass without objection in the trade under the contract description, that it was fit for the ordinary purposes for which such goods are used, that it was of fair average quality within the description, that it was adequately labeled, and that it would conform to the promises or affirmations of fact made on its label.  However, each of these implied warranties were false with respect to the goods of the kind sold to Plaintiff and members of the Class and New York Subclass.

65.     In reliance upon Defendants' skill and judgment and the implied warranties above, Plaintiff and Class and New York Subclass members purchased Body Fortress.

66.     Body Fortress was not altered by Plaintiff or members of the Class and New York Subclass.

67.     Body Fortress was defective when it left the exclusive control of Defendants.

68.     Defendants knew Body Fortress would be purchased and consumed by Plaintiff and members of the Class and New York Subclass without additional testing.  Body Fortress was not of fair average quality within its description, was not adequately labeled, and does not conform to the promises or affirmations of fact made on its label.

69.     More specifically, Defendants breached their implied warranty of merchantability to Plaintiff and the Class and New York Subclass because Body Fortress would not pass without objection in the trade because it does not conform to the promises or affirmation of fact made on its label.

16

70.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and New York Subclass members were injured because (a) they would not have purchased Body Fortress if they had known that Body Fortress did not contain 60 grams of premium protein per 2 scoops, and was not made from premium whey protein; (b) they paid a price premium for Body Fortress based on Defendants' implied warranties; and (c) Body Fortress did not have the characteristics, uses, or benefits as promised, namely that Body Fortress contains "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops" and/or is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."  As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of Body Fortress or in the difference in value between Body Fortress as warranted and Body Fortress as sold.

71.     On June 1, 2015, prior to filing this action, a pre-suit notice letter was served on Defendants which complies in all respects with N.Y. U.C.C. §§ 2-314, 2-607.  Plaintiff sent Defendants a letter advising them that they breached an implied warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

<u>**COUNT IV**</u>
**(Unjust Enrichment/Common Law Restitution)**

72.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against all Defendants.

74.     Plaintiff and members of the Class and New York Subclass conferred benefits on Defendants by purchasing Body Fortress.

75.     Defendants have been unjustly enriched in retaining the revenues derived from

Plaintiff's and Class and New York Subclass members' purchases of Body Fortress. Retention of those monies under these circumstances is unjust and inequitable because of Defendants' Misrepresentations about Body Fortress, which caused injuries to Plaintiff and members of the Class and New York Subclass because they would not have purchased Body Fortress if the true facts had been known.

76.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class and New York Subclass is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class and New York Subclass for their unjust enrichment, as ordered by the Court.

<u>**COUNT V**</u>
**(Deceptive Acts Or Practices, New York GBL § 349)**

77.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against all Defendants.

79.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentations.

80.     The foregoing deceptive acts and practices were directed at consumers.

81.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of Body Fortress to induce consumers to purchase same.

82.     Plaintiff and members of the New York Subclass were injured because (a) they would not have purchased Body Fortress if they had known that Body Fortress did not contain 60 grams of premium protein per 2 scoops, and was not made from premium whey protein; (b) they

18

paid a price premium for Body Fortress based on Defendants' Misrepresentations; and (c) Body

Fortress does not have the characteristics, uses, or benefits as promised, namely that Body

Fortress contains 60 grams of premium protein per 2 scoops, and was not made from premium

whey protein.  As a result, Plaintiff and members of the New York Subclass have been damaged

either in the full amount of the purchase price of Body Fortress or in the difference in value

between Body Fortress as warranted and Body Fortress as actually sold.

83.     On behalf of himself and other members of the New York Subclass, Plaintiff

seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or

fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT VI
### (False Advertising, New York GBL § 350)

84.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth

herein.

85.     Plaintiff brings this claim individually and on behalf of the members of the New

York Subclass against all Defendants.

86.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct

that is deceptive or misleading in a material way which constitutes false advertising in violation

of Section 350 of the New York GBL.

87.     Defendants' false, misleading, and deceptive statements and representations of

fact, including but not limited to, the Misrepresentations, were and are directed to consumers.

88.     Defendants' false, misleading, and deceptive statements and representations of

fact, including but not limited to the Misrepresentations, were and are likely to mislead a

reasonable consumer acting reasonably under the circumstances.

89.     Defendants' false, misleading, and deceptive statements and representations of

fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

90.     Plaintiff and members of the New York Subclass have been injured because (a) they would not have purchased Body Fortress if they had known that Body Fortress did not contain 60 grams of premium protein per 2 scoops, and was not made from premium whey protein; (b) they paid a price premium for Body Fortress based on Defendants' Misrepresentations; and (c) Body Fortress does not have the characteristics, uses, or benefits as promised, namely that Body Fortress contains "60 g[rams] [of] PREMIUM PROTEIN per 2 scoops," and was "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN."  As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of Body Fortress or in the difference in value between Body Fortress as warranted and Body Fortress as actually sold.

91.     As a result of Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff has suffered and will continue to suffer economic injury.

92.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendants' Misrepresentations because they paid more for Body Fortress than they would have had they known the truth about Body Fortress.

93.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII
### (Negligent Misrepresentation)

94.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against all Defendants.

96.     As discussed above, Defendants represented that Body Fortress: (i) contains "60 [g]rams [of] PREMIUM PROTEIN per 2 scoops," and (ii) is "SCIENTIFICALLY DESIGNED WITH: PREMIUM WHEY PROTEIN," but failed to disclose that Body Fortress contains free-form amino acids, including L-glutamine, non-protein amino acids, including taurine, and other non-whey ingredients. Thus, Body Fortress did not contain "60 [g]rams [of] PREMIUM PROTEIN per 2 scoops," nor was it "SCIENTIFICALLY DEISGNED WITH: PREMIUM WHEY PROTEIN." Defendants had a duty to disclose this information.

97.     At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

98.     At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about Body Fortress.

99.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class and New York Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and New York Subclass members to purchase Body Fortress.

100.     Plaintiff and Class and New York Subclass members would not have purchased Body Fortress if the true facts had been known.

101.    The negligent actions of Defendants caused damage to Plaintiff and Class and New York Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII
### (Fraud)

102.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

103.    Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against all Defendants.

104.    As discussed above, Defendants made false and misleading representations, including the Misrepresentations, and failed to disclose that Body Fortress contains free-form amino acids, including L-glutamine, non-protein amino acids, including taurine, and other non-whey ingredients.  Thus, Body Fortress did not contain "60 [g]rams [of] PREMIUM PROTEIN per 2 scoops," nor was it "SCIENTIFICALLY DEISGNED WITH: PREMIUM WHEY PROTEIN."  Defendants had a duty to disclose this information.

105.    The false and misleading representations and omissions were made with knowledge of their falsehood.

106.    The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class and New York Subclass members to purchase Body Fortress.

107.    The fraudulent actions of Defendants caused damage to Plaintiff and members of the Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

22

## **PRAYER FOR RELIEF**

108.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly

situated, seeks a judgment against Defendants, as follows:

A.      For an order certifying the nationwide Class and the New York
        Subclass under Rule 23 of the Federal Rules of Civil Procedure
        and naming Plaintiff as representative of the Class and New York
        Subclass and Plaintiff's attorneys as Class Counsel to represent the
        Class and New York Subclass;

B.      For an order declaring that Defendants' conduct violates the
        statutes referenced herein;

C.      For an order finding in favor of Plaintiff, the nationwide Class, and
        the New York Subclass on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to
        be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable
        monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper;
        and

H.      For an order awarding Plaintiff and the Class and New York
        Subclass their reasonable attorneys' fees and expenses and costs of
        suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  July 1, 2015                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:        /s Philip L. Fraietta
                                                    Philip L. Fraietta

                                          Scott A. Bursor
                                          Joseph I. Marchese
                                          Philip L. Fraietta
                                          Frederick J. Klorczyk III
                                        888 Seventh Avenue
                                        New York, NY  10019
                                        Telephone: (212) 989-9113
                                        Facsimile:  (212) 989-9163
                                        Email:  scott@bursor.com
                                                 jmarchese@bursor.com
                                               pfraietta@bursor.com
                                               fklorczyk@bursor.com

                                        *Attorneys for Plaintiff*

24

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVE.
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
TEL: 646.837.7410
FAX: 212.989.9163
JMARCHESE@BURSOR.COM

June 1, 2015

*Via FedEx 2Day Delivery*

NBTY, Inc.
2100 Smithtown Avenue
Ronkonkoma, NY  11779

United States Nutrition, Inc.
90 Orville Drive
Bohemia, NY  11716

Healthwatchers, Inc.
90 Orville Drive
Bohemia, NY 11716

Re:     *Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.;*
         *Violation of U.C.C. §§ 2-313, 2-314; and all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by NBTY, Inc., United States Nutrition, Inc., and Healthwatchers, Inc., (collectively, "Defendants") arising from breaches of warranty under the Magnuson-Moss Warranty Act on behalf of our client, Dalton Becky, and a class of all similarly situated purchasers of Body Fortress Protein Powder. This letter also serves as notice pursuant to U.C.C. § 2-607(3)(a) concerning the breaches of express and implied warranties described herein.  This letter additionally serves as notice of violations of all applicable consumer protection laws.

You have participated in the manufacture, marketing, and sale of Body Fortress Protein Powder.  Body Fortress Protein Powder has been marketed and sold as having "60 Grams Premium Protein" from "Premium Whey Protein" (collectively, the "Misrepresentations").  In fact, Body Fortress Protein Powder does not have "60 Grams Premium Protein" from "Premium Whey Protein," because Body Fortress Protein Powder contains free form amino acids and non-protein ingredients, including creatine monohydrate.  Independent laboratory testing reveals that Body Fortress Protein Powder only contains approximately 21 grams of protein per serving, when accounting for free form amino acids and creatine monohydrate.  Accordingly, these representations, made on Body Fortress Protein Powder's labeling, are false and misleading.

BURSOR&FISHER
P.A.

Prior to August 2014, Mr. Becky purchased Body Fortress Protein Powder in reliance on the Misrepresentations.  Defendants expressly warranted that Body Fortress Protein Powder protein's content is "Premium Whey Protein."  Defendants breached that express warranty because Body Fortress Protein Powder's protein content is not "Premium Whey Protein," but includes free form amino acids and other non-protein ingredients, including creatine monohydrate.  *See* U.C.C. § 2-313.

Defendants' conduct is also a deceptive business practice under all applicable consumer protection laws.

Mr. Becky is acting on behalf of a class defined as all persons in the United States who purchased Body Fortress Protein Powder.

To cure these defects, we demand that you (1) cease and desist from further sales of mislabeled Body Fortress Protein Powder; (2) issue an immediate recall of mislabeled Body Fortress Protein Powder; and (3) make full restitution to all purchasers of Body Fortress Protein Powder.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.     All documents concerning the design, development, supply, production, extraction, and/or testing of Body Fortress Protein Powder;

2.     All documents concerning the advertisement, marketing, or sale of Body Fortress Protein Powder;

3.     All documents concerning communications with any retailer involved in the marketing or sale of Body Fortress Protein Powder;

4.     All documents concerning communications with purchasers of Body Fortress Protein Powder;

5.     All documents concerning protein content testing;

6.     All documents concerning communications with federal or state regulators; and

7.     All documents concerning the total revenue derived from sales of Body Fortress Protein Powder in the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me right away.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

PAGE 3

Very truly yours,

Joseph I. Marchese